**STATE of Iowa, Appellee,**

v.

**David L. WELTON, Appellant.**

**No. 64116.**

Supreme Court of Iowa.

Jan. 14, 1981.

Martha Shepard, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and William Thomas, Asst. Polk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

SCHULTZ, Justice.

A jury found defendant David L. Welton guilty of the crime of willful injury in violation of section 708.4, The Code 1979. He appeals challenging the sufficiency of the evidence and a jury instruction. We affirm.

Section 708.4 provides: "Any person who does an act which is not justified and which is intended to cause and does cause serious injury to another commits a class 'C' felony." " 'Serious injury' means disabling mental illness, or bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." § 702.18, The Code 1979. To prove the element of "serious injury" the State relied exclusively on the "protracted loss or impairment of the function of any bodily member or organ" portion of the definition.

The facts are largely undisputed, and we shall summarize them. On May 16, 1979, the victim, Deborah Clutter, and the defendant, David L. Welton, were living together in a hotel room in Des Moines, Iowa. That afternoon defendant accused the victim of involvement with other men. That evening he accompanied her to a tavern. Defendant left for a period of time and became intoxicated by inhaling glue. When he returned to the tavern, he and the victim argued, apparently because defendant did not approve of the victim's frequenting the tavern.

Defendant and the victim left the tavern together and returned to their room. They continued to argue. The argument apparently became more heated, and defendant threw the victim down on the bed and struck her at least several times with his fist.

Someone called the hotel clerk, complaining of the noise, and the clerk went to their room and entered it. The victim ran from the room and later testified that the defendant kicked and hit her while she was going down the stairs.

The victim was taken by ambulance to Broadlawns Hospital. She was bleeding from the mouth and had contusions and bruises around the mouth area. She was examined, and it was determined that she had two breaks in her mandible, or lower jaw bone. One was a verticle fracture of the horizontal portion of the mandible on the left side, and the other was an oblique fracture through the angle of the mandible on the right side involving at least one molar tooth. It appeared that the fracture on the left side was through the entire mandible.

She was hospitalized overnight and sent to the University of Iowa Hospitals and Clinics in Iowa City for alignment of her jaw. Oral surgery was performed in which her jaw was wired shut. She remained a patient at the University Hospital for five days and was released. Six weeks later she returned and was hospitalized for two more days while the wires were removed. Medical testimony indicated that without alignment and wiring the fractures would probably have healed, but the teeth would not have been occluded, or properly aligned. Further, the injuries would have caused intense pain.

After her jaws were wired, her face was swollen, and she had pain and nausea. She could breathe, smoke, take liquid between her teeth, barely talk, but she could not chew food. She lost twenty to twenty-five pounds while her jaw was wired shut. Medical testimony indicated that even though the wires were removed after six weeks, the repair process of her mandible would take approximately one year. The medical testimony established that it would have taken a blow with tremendous force to fracture the bone.

I. *Sufficiency of the evidence.* The defendant contends that the injury sustained by the victim did not constitute a "serious injury" within the meaning of section 708.4. This contention was raised by a motion for a directed verdict, which was denied by the trial court.

Where the sufficiency of the evidence is challenged, we review the evidence in a

light most favorable to the prosecution; however, the evidence must be such that, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). Viewing the evidence as a whole, we must determine if the injury sustained by the victim meets the requirements of the statutory definition of "serious injury." We believe that the injury falls within this definition; therefore, a jury issue was engendered.

We have not previously interpreted either the section on willful injury or the definition of serious injury as set out in The Code. These provisions are part of the Iowa Criminal Code, which became effective January 1, 1978.

▮ Although the definition of serious injury bears some resemblance to the injury included in the crimes of assault with intent to inflict bodily injury, § 694.6, The Code 1977, and mayhem, ch. 693, The Code 1977, there are substantial differences between the new crime and its antecedents. Previous Iowa case authority does not bind us in construing the provisions before us. The legislature has provided us with guidelines in construing statutes, however: "Words and phrases shall be construed according to the context and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." § 4.1(2), The Code 1979. In addition, it is well established that penal statutes are to be interpreted strictly with doubts therein being resolved in favor of the accused, *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978), and must give fair warning of what is prohibited, *State v. Price*, 237 N.W.2d 813, 815 (Iowa 1976). However, when a statute is plain and its meaning is clear, courts are not permitted to search for meaning beyond its expressed terms. *State v. Hocker*, 201 N.W.2d 74, 74 (Iowa 1972). Applying these principles we will examine defendant's allegations.

▮ Defendant claims that the victim's injuries were not of such serious nature as

to qualify as a "protracted loss or impairment." Protracted is defined as "to draw out or lengthen in time or space." *Webster's Third New International Dictionary* 1826 (1966). It is undisputed that the fractures of the mandible of the victim prevented her from chewing food for six weeks, which medical testimony indicated was one of the important functions of the lower jaw. Under a similar statute in New York it was held that one who could not open his hand for two months because of a stab wound had a protracted impairment of health. *People v. Gray*, 47 A.D.2d 674, 675, 363 N.Y.S.2d 968, 970 (1975). In Wisconsin a skull fracture resulting in a quarter-sized hole that caused a loss of feeling on a victim's right side for six days, with no further effects, was held to be sufficient evidence for a jury to find a permanent or protracted loss. *Cheatham v. State*, 85 Wis.2d 112, 119, 270 N.W.2d 194, 198 (1978). We believe that a jury question was engendered as to the issue of a protracted loss or impairment of function.

Defendant further contends that the injuries shown do not rise to the level of a "serious injury." He points out that the first three definitions, disabling mental illness, substantial risk of death, and serious permanent disfigurement by comparison are much more serious. We do not agree with the inference of invalidity based on such argument, nor do we find such a great variance in the gravity of the definitions.

The legislature has the power and responsibility to define crime. *State v. Fuhrmann*, 261 N.W.2d 475, 479 (Iowa 1978). The legislature may be its own lexicographer and write its own definition of words and terms. *State v. Di Paglia*, 247 Iowa 79, 84, 71 N.W.2d 601, 604 (1955). The variances, if any, are of slight degree, and we see no abuse of legislative process.

▮ We believe the term "serious injury" in itself denotes a greater injury than the "pain or injury" included in the definition of assault in section 708.1(1), The Code 1979. By the use of the terms "loss or impairment of the function of any bodily

member" in the fourth definition, the legislature borrowed from the common law crime of mayhem. Common law mayhem is the deprivation of another's use of a member as may render him less able in fighting to defend himself. 57 C.J.S. *Mayhem* § 1 (1948). The gravity of the injury is obtained by the loss of function of the member· or organ. We believe that the fourth definition is consistent with the other three definitions.

Standard rules are difficult to formulate, and each case must be determined by its own peculiar facts. All bone fractures may not constitute a "protracted loss or impairment." However, the fracture in this case, which substantially impaired the victim's health, made a jury question under the statute.

II. *Improper Instructions.* Defendant maintains that the trial court improperly instructed the jury in its definition of relevant terms, in defining the terms "member" and "organ." We determine that no prejudice occurred to the defendant in the giving of the instruction.

The jury by arriving at a verdict of guilty must have determined that the victim's lower jaw was either a "member" or an "organ." Defendant maintains that this was due to an erroneous instruction which misled the jury. The court could have instructed the jury that the victim's lower jaw was a bodily member or organ, thus removing from them this determination.

■ "A court may in its instructions assume as a fact a matter of common knowledge, or a fact of which it takes judicial notice, without being chargeable with invading the province of the jury." 75 Am. Jur.2d *Trial* § 681 (1974). In *State v. Proulx*, 252 N.W.2d 426, 431 (Iowa 1977), we quoted *McCormick on Evidence* § 328 (2d ed. E. Cleary 1972), and stated: "There are 'two categories of facts [which] clearly fall within the perimeters of judicial notice, these being facts generally known with certainty by all the reasonably intelligent people in the community and facts capable of accurate and ready determination by resort to authorities of undisputable accuracy.' "

In *State v. Ritchison*, 223 N.W.2d 207, 211 (Iowa 1974), despite the presence of disputed evidence of the point in question, we approved an instruction that marijuana was a narcotic. Also, an instruction that a certain car was a railroad car was approved when defendant's own description of the structure came within the statutory definition of a railroad car. *State v. Anderson*, 154 Iowa 701, 704, 135 N.W. 405, 406 (1912). We allowed the trial court without the State's request to take judicial notice of certain organs of the exterior of the human anatomy. *State v. Howard*, 284 N.W.2d 201, 203 (Iowa 1979). The trial judge may instruct the jury on facts that clearly fall in the perimeters of judicial notice.

■ We must initially determine that we have grounds for judicial notice. Definitions contained in a dictionary would provide an accurate authority. *Webster's Third New International Dictionary* 1408 (1966) defines "member" as "a bodily part or organ." It defines "organ": "a differentiated structure (as a heart, kidney, leaf, flower) ... made up of various cells and tissues and adapted for performance of some specific function...." *Id.* at 1589. "Jaw" is defined: "any of various *organs* of invertebrates that perform the function of the vertebrate jaws." *Id.* at 1212 (emphasis added). Other jurisdictions have determined various parts of the body to be members. *See, e. g., Mitchell v. State*, 238 Ga. 167, 168, 23 S.E.2d 773, 774 (1977) (eye); *People v. Kopke*, 376 Ill. 171, 174, 33 N.E.2d 216, 217 (1941) (testicle); *Annots.*, 58 A.L.R. 1320 (1929), 16 A.L.R. 955 (1921). We conclude that the trial court could have defined the terms "member" and "organ" as a matter of law and instructed the jury that the jaw was a member or an organ.

■ The trial court did not instruct the jury that the injured jaw was a "member" or "organ." When the jury reached the same result, we conclude the defendant was not prejudiced. There can be no error when the issue on which the instruction is premised should have been resolved as a matter of law against the complaining par-

ty. *Curran Hydraulic Corp. v. National-Ben Franklin Insurance Co. of Illinois*, 261 N.W.2d 822, 828 (Iowa 1978).

This determination resolves defendant's complaint, and we need not examine his other objection to the instruction or determine if he preserved his error. We therefore affirm.

AFFIRMED.