**STATE of Iowa, Appellee,**

v.

**Dennis Ray EPPS, Appellant.**

**No. 66076.**

Supreme Court of Iowa.

Dec. 23, 1981.

Paul T. Shinkle, of Gottschalk, Shinkle & Long, Cedar Falls, for appellant.

Thomas J. Miller, Atty. Gen., and Shirley Ann Steffe, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

LARSON, Justice.

Dennis Ray Epps was convicted by a jury of willful injury, § 708.4, The Code 1979. He now appeals from judgment entered on the verdict, alleging the trial court erred in (1) permitting an alternate juror to retire with the jury after the close of the evidence and thereafter communicating with the juror in his and his counsel's absence; (2) failing to grant his motion for new trial on the ground the conviction was contrary to the evidence; (3) improperly instructing the jury; (4) admitting testimony which was beyond the scope of the State's minutes of evidence; and (5) failing to grant his motion in arrest of judgment. Finding no reversible error, we affirm the judgment of the trial court.

A reasonable jury could have found the following facts. Two of the defendant's brothers had been arrested and charged with a crime. Intent on discovering who had "fingered" his brothers, the defendant began his own investigation of the circumstances preceding their arrest because "whoever . . . snitched on [my] brothers [is] going to get it . . . [and] be hurt real bad." Ultimately, the defendant concluded that a long-time friend, Wilson Edward Bolden, had implicated his brothers in the crime. He then visited Bolden at the latter's apartment. When the defendant arrived at the apartment, he entered the front door and called out Bolden's name. Bolden responded and came from the kitchen into a dimly-lit hallway, where the defendant, armed with a handgun, was standing some five-to-ten feet away. Unsure of exactly what the defendant was holding in his hand, Bolden threw up one hand in front of him, moved his head to one side, and tried to step back. The defendant then fired the gun and the bullet struck Bolden in the face, entering his right nostril. Bolden testified that after he had been shot,

I felt a burning sensation and then I hit the floor. I was [unconscious] for about ten seconds, and then I raised my head and there was blood all over the place, and I felt all over my face, and I didn't feel nothing. The side of my jaw was swollen.

Other witnesses testified that Bolden appeared to be light-headed and had trouble keeping his balance. Transported first to a Waterloo hospital, Bolden was then transferred to University Hospitals in Iowa City, where he remained for six days. It was determined that the bullet had damaged the nasal bone structure and lodged in his left sinus cavity. Bolden testified that, as a result of the shooting,

I get deep migraines when it gets real hot, like about eighty-five [degrees] or over, and when it gets real cold . . . I get a lot of sinus drip off my left nostril, and it runs for awhile, and . . . I get real deep headaches. . . .

## I.  *The alternate juror.*

After the cause was submitted to the jury the trial court realized an alternate juror had not been discharged in accordance with Iowa Rules of Criminal Procedure 17(17), 18(7)(f), (h).  The court subsequently stated:

> [T]he court's recollection . . . is that shortly after the jury went to the juryroom and the court's best estimate would be in the area of 25 to 35 minutes thereafter, the court thought about the [location of the] alternate juror, . . . instructed the bailiff to call the alternate juror out of the juryroom and . . . ascertained that what had transpired in the juryroom in this period of time was that the jury had selected a foreman, but had not entered into any deliberations with respect to the merits of the case of the guilt or innocence of the defendant.  Shortly thereafter, the court located counsel for the State and defendant, informed them of what the court had realized and discovered and what action that the court had taken. . . .

After the jury returned its verdict, the defendant filed combined motions for new trial, Iowa R.Crim.P. 23(2)(b)(9), and in arrest of judgment, Iowa R.Crim.P. 23(3), claiming *inter alia* he was denied a fair trial because the alternate juror had improperly retired with, and the trial court had improperly communicated with, the jury.  The motions were denied.

On appeal the defendant reasserts his argument that he was denied a fair trial.  The State, in turn, argues that he failed to preserve error in the trial court by timely objecting to the alleged irregularities and moving for mistrial.

■ Although counsel for the defendant maintains that no court reporter was actually present when the trial court informed the parties of the circumstances involving the alternate juror, and that as a result the issues were raised in a timely manner by his post-trial motions, he had an obligation *to provide* a record for objection *before* the jury returned its verdict.  For example, his objections and accompanying motion for mistrial could have been recorded by securing a court reporter or filing a written motion with the clerk, or, if neither of those opportunities were present, by lodging a verbal objection and motion and preserving error through a bill of exceptions, Iowa R.Crim.P. 23.1.  To hold otherwise, under such circumstances, would permit an accused to forego making an objection in the hope of receiving a favorable verdict.  Accordingly, this case is distinguishable from those in which defense counsel have become notified of errors occurring in the deliberation process *after* the jury has returned a verdict.  We conclude the defendant failed to properly preserve the alleged errors.  *See* 76 Am.Jur.2d *Trial* § 1080, at 73 (1975) ("A defendant cannot gamble on a favorable verdict before urging a communication with the jury as error, but must make prompt objection and motion for mistrial or he will lose any advantage to be gained by it."); 4 C.J.S. *Appeal & Error* § 288, at 857, 858 (1957) ("Misconduct of the trial jury which cannot be objected to for the first time in the appellate court may consist of . . . communicating with the jury, while they were deliberating, without the knowledge or consent of the attorneys . . . . [and] it is particularly the duty of counsel, by timely objection, to call the attention of the court to the evident impropriety of . . . the conduct . . .; otherwise it would be possible to refrain intentionally from making objections or reserving exceptions in order to lay ground for reversal."), § 308, at 987 ("Except where there has been no opportunity to interpose a formal objection or exception in the lower court . . . it is the general rule that objection cannot be urged for the first time on appeal because of error or irregularities with respect to the custody, conduct, or deliberations of the jury.").  *Cf. State v. Gibb,* 303 N.W.2d 673, 678 (Iowa 1981) ("Generally, a mistrial motion must be made when the grounds therefor first become apparent."); *State v. Bakker,* 262 N.W.2d 538, 544 (Iowa 1978) ("It is defendant's obligation to provide this court with a record which affirmatively discloses the error upon which he relies."); *State v. Blackwell,*

238 N.W.2d 131, 137 (Iowa 1976) ("If an incident during trial would cause a jury to become impartial, the logical route would be for the defendant to move for the declaration of a mistrial."); *State v. Wallace*, 261 Iowa 104, 107, 152 N.W.2d 266, 268 (1967) ("though counsel for defendant moved for a mistrial [for trial court's failure to admonish the jury prior to recess] after . . . recess had been declared, he voiced no in-court objection to the procedure and afforded the trial judge no opportunity to correct the error").

■ One matter deserves further comment. While he did not prove the possibility of prejudice, *e.g., State v. Hempton*, 310 N.W.2d 206, 209 (Iowa 1981), it is clear that the defendant, Iowa R.Crim.P. 25(1) [1]—as well as his counsel—should have been present when the court interviewed the alternate juror after he was removed from the jury room. We have consistently disapproved of trial courts having private communications with jurors. *State v. Anderson*, 308 N.W.2d 42, 49 (Iowa 1981); *State v. Dreesen*, 305 N.W.2d 438, 440 (Iowa 1981); *State v. Hahn*, 259 N.W.2d 753, 757 (Iowa 1977); *Blackwell*, 238 N.W.2d at 137 (Iowa 1976); *State v. Cowman*, 212 N.W.2d 420, 425–26 (Iowa 1973); *Daniels v. Bloomquist*, 258 Iowa 301, 306–307, 138 N.W.2d 868, 871–72 (1965); *see Rogers v. United States*, 422 U.S. 35, 36, 95 S.Ct. 2091, 2093, 45 L.Ed.2d 1, 6 (1975); 3 C. Wright & A. Miller, *Federal Practice and Procedure* § 724, at 202–206 (1969).

## II. *"Serious injury."*

The defendant argues the trial court erred in denying his motion for new trial on the ground "there was unsubstantial evidence to support the conviction" under sec-tion 708.4 because the State failed to prove he caused a "serious injury." [2] Section 702.-18 defines that phrase, in part, as "bodily injury which creates a substantial risk of death [3] or which causes . . . protracted loss or impairment of the function of any bodily member or organ." The trial court here submitted the issue of serious injury to the jury under this instruction, II *Iowa Uniform Jury Instructions (Criminal)* No. 219 (1978), over the defendant's objections:

One of the elements of the offense is that Wilson Edward Bolden suffered a serious injury. A serious injury for the purpose of this case is a bodily injury, which creates a substantial risk of death or which causes protracted loss or impairment of the functions of any bodily member.

A bodily injury which creates a substantial risk of death is such an injury which causes or is likely to cause a real hazard or danger of death.

A bodily injury which causes a protracted loss or impairment is such an injury as would prolong or extend the loss or use of a member, or which would weaken, damage or reduce the use of a member.

■ In *Anderson*, 308 N.W.2d at 47, we adopted the substantial risk of death portion of the uniform instruction. In *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981) we stated that "protracted" under the statute meant "to draw out or lengthen in time or space." And, in *State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981), we defined "impairment" under section 702.18:

We recognized in *Welton* that not every harm is an impairment of function within the meaning of the statute. However, a harm which substantially inter-

---

1. Rule 25(1) provides that in felony cases "the defendant shall be present . . . at every stage of trial . . . except as otherwise provided by this rule." The examination of the alternate juror by the trial court was a stage of trial within the meaning of rule 25(1). *See State v. Blackwell*, 238 N.W.2d 131, 135 (Iowa 1976). *See also State v. McKee*, 312 N.W.2d 907, 914–915 (Iowa 1981).

2. Section 708.4 provides: "Any person who does an act which is not justified and which is intended to cause and does cause serious injury to another commits a class 'C' felony."

3. In his motion for judgment of acquittal, Iowa R.Crim.P. 18(10)(a), the defendant argued *inter alia* there was insufficient evidence of a "substantial risk of death." The motion was denied by the trial court.

feres with an organ's function meets the statutory test. An impairment, according to common usage, includes any deviation from normal health. The term means: "To weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in any injurious manner." Thus a harm which makes the function of an organ intensely painful or irregular is an impairment.

(citations omitted). The uniform instruction on protracted loss or impairment is not inconsistent with our statements in *Welton* and *McKee*. Accordingly, we do not find any error in the trial court's instructions on serious injury.

■ We believe the evidence in this case, while not overwhelming, demonstrated the victim received a bodily injury which created a substantial risk of death as well as one which caused a protracted loss or impairment of the function of an organ. The evidence, which was not rebutted, showed the victim was shot in the face with a handgun at close range, knocking him to the floor and causing temporary unconsciousness. He remained in a hospital for six days. He testified that at the time of trial—some two months after the shooting—he suffered from migraine headaches, depending upon weather conditions, and that he experienced excessive discharge from his sinus. These ailments manifestly come within the definition of serious injury: they are injuries which leave the victim "permanently scarred or twisted . . ., [in contrast to] a black eye, a bloody nose, and even a simple broken arm or leg," 4 J. Yeager & R. Carlson, *Iowa Practice and Procedure* § 45, at 16 (1979). We conclude the trial court did not err in denying the defendant's motion for new trial under our standard of review. *See State v. Sharpe*, 304 N.W.2d 220, 225–26 (Iowa 1981).

III. *The minutes of evidence.*

During the trial Bolden approached the prosecutor and informed him for the first time of conversations with the defendant in which the defendant had told Bolden that he would effectively take "an eye for an eye" from the person who had informed the authorities of the crime in which his brothers had participated. The prosecutor immediately related this information to defense counsel and the trial court. At an in-chambers discussion the defendant objected to the proposed introduction of the testimony on motive, claiming it was without the scope of the State's minutes of evidence, Iowa R.Crim.P. 5(3),[4] as defined in *State v. Walker*, 281 N.W.2d 612, 614 (Iowa 1979). This objection was denied by the trial court, and over the defendant's in-court objections Bolden testified that prior to the shooting the defendant stated he would have his revenge against the person who had "snitched" on his brothers. On appeal the defendant again contends the admission of this testimony to be error.

■ Although the State concedes this testimony by Bolden exceeded the scope of the minutes, we do not agree. The minutes provided in part that Bolden would testify about "his relationship with Dennis Ray Epps prior to the shooting and conversations that took place with [him] prior to the shooting." This statement encompasses the testimony by Bolden on the defendant's conversations with him concerning his brothers' arrest and what he intended to do about it. While the defendant stresses he was not placed on notice of this evidence since there was no indication of it in a file presented to him by the State before trial, no significance attaches to that fact under rule 5(3). In any event, the State could not have specified the nature of these particular conversations in the minutes since it was unaware of their substance until the trial

4. Rule 5(3) provides:

The prosecuting attorney shall, at the time of filing such information, endorse or cause to be endorsed thereon the names of the witnesses whose evidence the prosecuting attorney expects to introduce and use on the trial of the same, and shall also file with such information the minutes of evidence of such witness which shall consist of a notice in writing stating the name, place of residence and occupation of each witness upon whose expected testimony the information is based, and a full and fair statement of the witness' expected testimony.

**558**

had begun. As rule 5(3) provides, the State is only required to provide in the minutes "the name, place of residence and occupation of each witness upon whose *expected* testimony the information is based, and a full and fair statement of the witness' *expected* testimony." (Emphasis added.) *Cf. State v. Marchellino*, 304 N.W.2d 252, 255 (Iowa 1981) (under Iowa R.Crim.P. 12(3) a defendant must list all witnesses "expected to be called for the defense"; subjective test of defendant's expectation applied).

■ Moreover, although defense counsel at oral argument insisted he requested "substantial additional time" for the preparation of the defense in light of the testimony on motive, no motion for continuance, Iowa R.Crim.P. 18(2), appears in the record. Under such circumstances any alleged error in the admission of the testimony was waived. *Cf. State v. Hall*, 297 N.W.2d 80, 92 (Iowa 1980) (motion for continuance not sought where State furnished exculpatory evidence during, rather than before, trial); *State v. Rush*, 242 N.W.2d 313, 316 (Iowa 1976) (motion for continuance not sought where State filed an amended and substituted information).

IV. *The motion in arrest of judgment.*

The defendant contends the trial court erred in denying his motion in arrest of judgment, Iowa R.Crim.P. 23(3), because the court failed "to reserve ruling on the motion for judgment of acquittal, and therefore, given the lack of evidence of serious injury, [failed] to reduce the judgment to assault with intent to inflict serious injury." Because its underlying premise is invalid, as discussed above in division II, there is no merit in the argument.

In view of the foregoing, we find no reversible error on the part of the trial court.

AFFIRMED.