STATE of Iowa, Plaintiff-Appellee,

v.

Keith Edwin HILPIPRE, Jr., Defendant-Appellant.

No. 85–1020.

Court of Appeals of Iowa.

Aug. 27, 1986.

Charles L. Harrington, Appellate Defender, and B. John Burns, Asst. Appellate Defender; for defendant-appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and Ray Kinley, Asst. Co. Atty., for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

Defendant Keith Hilpipre, Jr. appeals from his conviction and sentence of willful injury, in violation of Iowa Code section 708.4 (1985), and operating a motor vehicle without the owner's consent, in violation of Iowa Code section 714.7 (1985). Defendant asserts that there was insufficient evidence in the record to support the finding that he committed the crime of willful injury. We affirm.

On December 11, 1984, Des Moines Police Detective Ralph Woods, proceeding westbound on Park Avenue, noticed a large truck tailgating him. The truck suddenly began to pass Woods at a high rate of speed, and Woods, observing another car traveling towards them on the other side, pulled over as far as he could, narrowly avoiding an accident.

Woods began pursuit of the vehicle, overtook the truck about twelve blocks farther down the street, and flashed his high-low beams to signal the driver of the truck to stop. Woods observed that there were three passengers in the truck. As both Woods and the driver got out of their vehicles, Woods hollered and advised the driver, later identified as defendant's brother, Kelly, that he was a police officer and extended his badge to prove identification. The driver suddenly struck Woods on the left side of the head, and Woods fell stunned to the pavement.

Recovering from the blow, Woods jumped into his car and pursued the truck into the parking lot of the Valley Park Depot Lounge. Pulling behind the truck, Woods observed that the truck was empty. After several unsuccessful attempts, Woods made contact with a police dispatcher and began to call in the license plate number of the truck. At that point, according to two witnesses who testified at trial, a man resembling defendant who had been hiding behind some parked cars ran up to the driver's side of Woods's car and began to either talk to or beat upon Woods. A continual beating then ensued.

During the brutal attack, Woods's foot slipped off the brake, causing his car to

coast forward and strike the truck's rear bumper. At that point, according to witnesses, Kelly, defendant's brother, yelled "You hit my truck," ran up to the passenger window, kicked out the window, and began beating upon Woods from the other side. As Woods attempted to call for help, both assailants ripped out the police radio. The two assailants then dragged Woods out of the car by his feet onto the ground, and, according to witnesses, one or both began savagely kicking Woods in the head and chest. Just before losing consciousness, Woods heard one of his assailants say that he was going to kill Woods. A patron of the bar finally stood over Woods and told the man he identified as Kelly to stop. At that point, according to witnesses, the other assailant, resembling defendant's size and build, drove away in Woods's car.

Arrested at the scene were Kelly Hilpipre and John Onder, a third passenger in the truck who apparently fled the scene before the beating occurred. Woods's car was found approximately three-eighths of a mile from defendant's home, where defendant was arrested. Four fingerprints lifted from the car were identified as being those of defendant's, along with several identified as Kelly's.

At trial, Detective Woods testified that he did see who had hit him while he was in the car and admitted that he could not identify the defendant as being involved in the incident. Woods also testified that he received two broken ribs, lost two lower front teeth, had a permanent scar around his mouth, received numerous lacerations about the face, and was in a great deal of pain for approximately six or seven weeks after the incident.

Witnesses Allen and Brandenburg testified that a man they later identified as Kelly stood near them as Woods pulled into the tavern parking lot. Both testified that another man resembling defendant but whom neither could positively identify, ran up to the car and began beating on Woods. Both testified that the man who appeared to them to be Kelly yelled out "You hit my truck" when Woods's car hit the truck and

proceeded to join the beating. While neither witness could see clearly, one witness testified that he thought the man resembling defendant had stopped beating Woods after Woods had been dragged onto the ground, while the other testified that he thought both assailants were brutally kicking Woods. Both Allen and Brandenburg testified that the man resembling defendant drove away in Woods's car.

John Onder, the third passenger in the truck, testified that he was with the defendant and Kelly on the night in question. Onder stated that it was Kelly who initially hit Woods along side the head when Woods first pulled them over. Onder also testified that when he, the defendant, and Kelly arrived in the tavern lot, he (Onder) stood by the truck until he saw Woods's car pull into the lot, at which point he became afraid that trouble was brewing. Onder testified that he ran to the back of the building and hid in some nearby bushes. He stated that he heard someone yell, but did not see the actual beating. After about five minutes, said Onder, he returned to the bar and saw Kelly standing in the lot, but also discovered that defendant and Woods's car were gone. Onder did not see defendant around the rest of the evening. Onder was initially arrested, but was later released since the police investigation found no signs of a struggle on his hands or boots.

Dr. Kenneth Schultheis and Dr. Abraham Wolf testified that Woods was in shock upon arrival at the hospital, suffering from severe swelling in the head and chest, facial lacerations, and two broken ribs. They testified that Woods suffered from atelectasis, or small collapse of the lungs, and as a result, was in danger of catching pneumonia. Both doctors testified that without treatment, Woods would have been under a substantial risk of death.

Upon consideration of all the evidence, the trial court found defendant guilty on the charges of willful injury and operating a motor vehicle without the owner's consent and sentenced him to serve terms not

to exceed ten and two years respectively. Defendant appeals.

Defendant asserts that there was insufficient evidence in the record for a rational factfinder to find beyond a reasonable doubt that defendant committed the elements of the crime of willful injury. Defendant claims that assuming *arguendo* that he did commit an assault, he nevertheless did not possess the requisite intent to commit willful injury, and, assuming further that defendant did possess the requisite intent, the injuries sustained by Wood fell far short of "serious injury" under Iowa Code section 708.4 (1985). We strongly disagree.

In reviewing a challenge to sufficiency of the evidence, we must view evidence in the light most favorable to the State. *State v. Doss*, 355 N.W.2d 874, 877 (Iowa 1984); *State v. Robinson*, 288 N.W.2d 337, 338 (Iowa 1980). We must also consider all legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bair*, 347 N.W.2d 416, 419 (Iowa 1984); *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). We will uphold a verdict unless the record lacks substantial evidence to support it. *State v. Mitchell*, 371 N.W.2d 432 (Iowa Ct.App.1985). Substantial evidence means evidence which would convince a rational factfinder that the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.*

 Under Iowa Code section 708.4 (1985), three elements must be proved before willful injury may be found: (1) that there was an assault; (2) with intent to commit serious injury upon another; and (3) serious injury is in fact inflicted upon another. Defendant first claims that there was no direct evidence offered by the State to show that defendant was involved in the savage beating of Detective Woods. While it is true that the State must prove identity beyond a reasonable doubt, *State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974), circumstantial evidence may often be as equally probative or superior to that of direct evidence. *Doss*, 355 N.W.2d at 878;

*Harsha v. State Savings Bank*, 346 N.W.2d 791, 800 (Iowa 1984); *State v. Moses*, 320 N.W.2d 581, 586 (Iowa 1982); *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979). As stated by the United States Supreme Court in *Holland v. United States:*

> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence.

348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166–67 (1954). Upon viewing the evidence in a light most favorable to the State and upon consideration of all the evidence and attendant inferences and presumptions which may be fairly and reasonably deduced from the record, we believe there is substantial circumstantial evidence of defendant's participation in the assault.

The evidence reveals that defendant, defendant's brother, Kelly, and John Onder were occupants of the truck that swerved into the Valley Depot parking lot. Two witnesses, Allen and Brandenburg, testified that the three men jumped out of the truck and ducked behind parked cars. Both Allen and Brandenburg testified that as Detective Woods's car turned into the parking lot, a man they later identified as Kelly stood near them, while a third man, later identified as Onder, ran away. While neither witness could positively state that defendant was one of the assailants, both did testify that one of the three men, resembling defendant in size and build, ran up to the driver side of Woods's car and began to either talk with Woods or beat on him. As this beating took place, Woods's vehicle rolled forward and struck the rear of the truck. Allen and Brandenburg both testified that upon seeing this, Kelly ran over to the car, kicked out the passenger window, and began beating Woods from the opposite side. The witnesses also testified that the two men then dragged Woods out of the car. While testimony as to which assailant actually began "run-kicking" the defenseless Woods is somewhat

conflicting, one or both of the men proceeded to kick Woods savagely in the head and chest. Witness Allen finally ran over to Kelly, telling him to stop. At that point, both witnesses testified that the other assailant resembling defendant jumped into Woods's car and drove away.

Woods's car was later found three-eighths of a mile from defendant's home, where he was arrested. Kelly and Onder were arrested at the scene. Four fingerprints lifted from the car were identified as defendant's, while several fingerprints were identified as Kelly's. No fingerprints of John Onder were found on the car. From these facts, we believe that a rational factfinder could conclude beyond a reasonable doubt that the defendant participated in the assault.

We also find that there was substantial evidence from which the trial court could conclude beyond a reasonable doubt that defendant intended to commit a serious injury upon Detective Woods. Iowa law clearly recognizes that "[i]ntent is rarely capable of direct proof and must usually be shown by circumstantial evidence." *State v. Delay,* 320 N.W.2d 831, 835 (Iowa 1982). Given that criminal intent is rarely susceptible to direct proof, the factfinder may determine intent by such reasonable inferences and deductions as may be drawn from facts proved by evidence in accordance with common experience and observation. *State v. Serr,* 322 N.W.2d 96, 101 (Iowa Ct.App.1982). In its findings of fact, the trial court noted that both defendant and his brother were young, over six feet tall, and very muscular, while the victim was fifty-one years old. Discussing the element of intent, the trial court stated:

Intent may be proven by both direct and circumstantial evidence. Considering the age of this victim and the force of the blows, the swelling of the face to where one officer arriving on the scene could hardly recognize Mr. Woods, considering these blows to have been ongoing for some period of time with one on one side, the other joining him, then one going to the other side of the car continuing kicking and punching, then the one party returning to the driver's side again, pulling Woods out of the car and more kicks, after that some significant period of time elapsed in the beating, finally someone had to step in to stop it.

From these facts the trial court found, and we agree, that defendant intended to inflict serious injury upon Woods. Defendant, however, contends that even if we find that he did participate in the assault, he did not participate in the "running-type" kicking which defendant claims caused the greatest injury, but instead terminated his attack when Woods was dragged out of the car.

We likewise find this claim to be without merit. Even assuming that defendant did terminate the attack prior to the "run kicking," a rational factfinder could still find beyond a reasonable doubt from the savage beating Woods received *before* he was dragged out onto the ground that defendant intended to cause serious injury.

Defendant lastly contends that the injuries received by Woods fell far short of the serious injury requirement of Iowa Code section 702.18. We disagree.

Pursuant to Iowa Code section 702.18 (1985), a serious injury is any "disabling mental illness, or bodily injury which creates a substantial risk of death or which causes serious injury, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." The trial court concluded that Woods's injuries created a protracted loss or impairment of the function of a bodily member or organ in three respects: (1) the development of "atelectasis," or partial collapse of the lungs; (2) considerable pain resulting from the two broken ribs Woods suffered, which impaired the functioning of his lungs over a several-month period; and (3) the fractured ribs with corresponding pain created an impairment of the functioning of the ribs.

At trial, Detective Woods testified that the pain in his ribs was severe nearly six weeks after the incident. Woods testified

that he experienced great difficulty in breathing and for several weeks could not lie flat in bed, but had to sleep in a recliner. Woods further testified that it was difficult for him to walk more than a block and a half and that when he takes a deep breath or coughs, his ribs "snap back and forth like it is coming out of joint or something and it does create slight pain and discomfort." Woods still experiences difficulty in playing golf or tennis.

Dr. Kenneth Schultheis, the emergency room physician who initially treated Woods, testified that upon Woods's arrival at the hospital, Woods was in severe pain and had a tremendous swelling with some discoloration on the right side of his chest and that touching his chest was horribly painful. Dr. Schultheis also testified that due to the partial collapse of a portion of his lung, Woods was under a great risk of developing pneumonia, and, coupled with shock and other injuries had they not been treated, Woods was at serious risk of dying. Dr. Abraham Wolf similarly testified that while the ribs are not actually part of the breathing process, when injured they do create pain when breathing or coughing and may cause the condition of atelectasis. Dr. Wolf also testified that the severity of the blows inflicted upon Woods's head and chest, coupled with the size and age of the defendant and Woods, created a good risk of brain damage or cardiac arrhythmia, creating a substantial risk of death had Woods not been treated.

In *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981), the Iowa Supreme Court defined "protracted" as "to draw out or lengthen in time and space." In *Welton*, the court held that a fractured jaw which prevented the victim from chewing food for six weeks was a protracted injury. 300 N.W.2d at 160. The *Welton* court also cited with approval *Cheatham v. State*, 85 Wis.2d 112, 119, 270 N.W.2d 194, 198 (1978), wherein the Wisconsin Supreme Court held that a skull fracture which caused a loss of feeling for six days, with no further effects, was sufficient for a jury to find a protracted loss. *Id.*

In *State v. Epps*, 313 N.W.2d 553, 554 (Iowa 1981), the victim complained that after he had been shot in the face, he began to suffer severe headaches and sinus drip. While recognizing that not every harm is an impairment, the court, citing *State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981), noted that impairment means any harm which makes the function of an organ intensely painful. 313 N.W.2d at 557. The court held that the injuries suffered in that case caused a protracted loss or impairment. *Id.*

Based upon the severity of the injuries received to Woods's ribs, the long period of time in which Woods experienced great pain and difficulty in sleeping, walking, or participating in other athletic activities, the discomfort in breathing which Woods still endures, and the initial collapse of a portion of Woods's lung, we believe that the trial court did not err in finding that Woods suffered a protracted loss or impairment of a bodily member or organ. We likewise believe that the loss of two lower front teeth also constituted a protracted loss under the standards set forth in *Welton* and *Epps*.

Defendant, however, attempts to mitigate the severity of Woods's injuries by alleging that Woods was not at substantial risk of death after he was hospitalized. The Iowa Supreme Court stated the standard for finding substantial risk of death quite clearly in *State v. Phams*:

> [S]erious injury means something more than the "pain or injury" element in the assault statute, section 708.1(1). [Authority] ... [A] substantial risk of death means more than just any risk of death but does not mean that death was likely. If there is a "real hazard or danger of death," serious injury is established. [Authority]

342 N.W.2d 792, 796 (Iowa 1983) (citing *State v. Anderson*, 308 N.W.2d 42, 47 (Iowa 1981)). We may properly consider the risk of death before treatment in determining whether a victim has suffered serious injury. *State v. Anderson*, 308 N.W.2d 42, 47 (Iowa 1981).

Specifically addressing the risk of death faced by Woods, both doctors testified that Woods was under a substantial risk of death in the absence of treatment. Woods was in shock and in severe pain and suffered numerous lacerations about his head. Blood clogged both nasal passages, making it difficult for Woods to breath. Woods suffered a partially-collapsed lung and was under substantial risk of developing pneumonia. The doctors also testified that injuries received to the head and chest created a risk of brain damage and cardiac arrhythmia. From these facts a rational trier of fact could conclude that a substantial risk of death existed for Woods. To liken the injuries received by Woods to a black eye or a bloody nose, as defendant suggests, is incredulous.

Because we find no reversible error, the case is affirmed.

AFFIRMED.