## IN THE COURT OF APPEALS OF IOWA

No. 13-1223
Filed July 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RONALD E. VOWELS JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee County, John G. Linn, Judge.

Ronald E. Vowels Jr. appeals his convictions for willful injury causing serious injury and going armed with intent.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Michael P. Short, County Attorney, and Clinton R. Boddicker, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Ronald E. Vowels Jr. appeals his convictions for willful injury causing serious injury and going armed with intent. He claims there was insufficient evidence to support his convictions and his counsel was ineffective. We find sufficient evidence to support Vowels's convictions and preserve the issue of ineffective assistance of counsel for postconviction relief.

## I.    Background Facts and Proceedings

On the evening of February 24, 2013, Ronald Vowels participated in a parking lot fight involving multiple parties. The only fact everyone agrees upon is the end result: Vowels and his friend, Eric Mueller, were flat on the ground, and Troy James left the area with a potentially life-threatening wound to his face.

Earlier that evening, James arrived at Tena's Tap in Fort Madison at the request of a friend. Upon arrival, James testified he consumed one beer and one shot. Also present at the bar was Vowels, who may have held a grudge against James.[1]

After approximately thirty minutes in the bar, James exited to the parking lot to smoke a cigarette. The bartender, Mary Morrical, testified Vowels followed James with a look on his face that led Morrical to believe Vowels was looking for trouble. Outside the bar, Vowels confronted James while Mueller circled around the other side of a nearby truck, effectively trapping James in place. The fight ensued, with James knocking both Vowels and Mueller unconscious with one

---

[1] At trial, James testified he heard Vowels was upset with him because of allegations James had "snitched off" Vowels's parents in an earlier criminal action. Vowels disagreed and testified he had no ill feelings towards James.

punch each. Bleeding profusely, James walked back into the bar and went home to tend to his wound. Unable to stop the bleeding at home, he went to a local hospital where doctors determined eighteen stitches were required to close the wound. Because of an abnormally low platelet count, possibly caused by extensive alcohol consumption, doctors testified James's wound would not have stopped bleeding on its own and could have cost him his life.

Following the fight Morrical called 911. Officer William Kester arrived at approximately 11:43 p.m. and found Vowels and Mueller lying unconscious on the ground. Officer Kester determined the amount of blood on the ground could not have come from the visible wounds of these two men. Another responding officer searched the area for more blood and located a knife under a nearby truck. The knife matched one Vowels admitted to owning. Vowels testified he normally kept the knife in his left front pocket and offered no explanation of how the knife could have ended up under the truck. During the investigation officers were made aware of James's wounds from a report the hospital made to law enforcement.

Vowels was interviewed by Officer Dave Doyle on February 27, 2013, and initially informed the officer he had no recollection of the events before he was knocked out. Vowels later admitted the knife was his and he had it with him on the night in question. Vowels also told Doyle that he possibly stabbed James. Vowels later apologized to Officer Doyle and hoped to apologize to James at some point for what had occurred.

No one saw how James's injury was sustained. Morrical heard a bar patron say he was cut with a beer bottle. James did not see who cut his cheek or how. Vowels claimed at trial to have no knowledge of how James sustained the injury or how his knife ended up out of his pocket under the truck.

Vowels was convicted by a jury. Twice he made a motion for judgment of acquittal, each denied by the district court. The motions challenged "each and every element of this case," but specifically focused on the identity of the attacker and possession of the weapon. The district court found the State "put on sufficient evidence on each element of the two crimes" and denied the motions. Vowels's trial counsel did not request a proximate cause instruction.

## II. Standard of Review

Challenges to the sufficiency of the evidence are reviewed for correction of errors at law. *State v. Showens*, 845 N.W.2d 436, 439–40 (Iowa 2014). All evidence is viewed in the light most favorable to the State, including all reasonable inferences. *Id.* The verdict will be upheld if substantial evidence in the record supports it. *Id.*

## III. Discussion

### A. Preservation of Error

The parties disagree on whether error was preserved on Vowels's claims concerning the elements of intent and justification. The State contends Vowels did not present the elements in either of his motions for judgment of acquittal. Our review is strictly limited to the issues actually presented to the district court at trial. *State v. Moses*, 320 N.W.2d 581, 585 (Iowa 1982). We will examine any

issues considered by the district court, even if that consideration was "incomplete or sparse." *Lamasters v. State*, 821 N.W.2d 856, 865 (Iowa 2012). Vowels argued to the district court that there was insufficient evidence on "each and every element of the case." Though he went on to focus more specifically on select elements, we find he presented all elements to the district court, if in a minimal manner. The district court likewise ruled broadly on "each element of the two crimes." We find this ruling sufficient to preserve error on the issues presented on appeal.

## B.    Sufficiency of the Evidence

Vowels claims there is insufficient evidence to convict him of both charges. He contends that a jury could not conclude he cut James because no one saw him do so and James was unable to pinpoint when the cut occurred. Additionally, there was conflicting evidence on whether James was cut with a bottle or some other object. Vowels also claims justification for his actions because James was the aggressor. Additionally, Vowels asserts there is no evidence he intended to inflict a serious injury on James because Vowels could not have known James's low platelet count would put him in mortal danger. Vowels's claims on the second charge are nearly identical.

### 1.    Willful Injury

Iowa Code section 708.4 (2013) requires proof of three elements for the crime of willful injury. The State must prove: "(1) that there was an assault; (2) with intent to commit serious injury upon another; and (3) serious injury is in fact inflicted upon another." *State v. Hilpipre*, 395 N.W.2d 899, 902 (Iowa Ct. App.

1986). It is undisputed this case suffers from a lack of direct proof on these elements. However, circumstantial evidence can be sufficient, and in some cases even superior, to direct proof. *Id.*

The evidence is overwhelming that an assault occurred, and we find a jury could conclude, beyond a reasonable doubt, that Vowels was the assailant. The evidence showed Vowels, who is left handed, and Mueller followed James out of the bar and effectively trapped him, leading to the altercation. After the fight, Vowels was left unconscious on the ground, next to the truck, under which the knife was located. It is reasonable for a jury to have concluded the knife was in Vowels's left hand and was dropped under the truck when Vowels was punched. The wound to the right side of James's face resulted. Considering the extensive and persistent bleeding, we find it hard to conclude James had been cut before the fight and was standing in the parking lot bleeding profusely when Vowels and Mueller surrounded him. Additionally, there is no evidence that James had suffered any type of injury while in the bar. It is illogical to conclude James had previously sustained his injury but did not notice it until after the fight. The most probable scenario is that James sustained his injury during the fight, which occurred while Vowels was the only person on the proper side of James's face. Vowels relied heavily on the fact that law enforcement did not send the knife away for testing. However, photographs included in the record show what is likely blood on the blade of the knife. The jury could reasonably conclude the knife was recently used to stab James in the face, leaving his blood on the knife. Circumstantial evidence adequately supports a single conclusion: Vowels cut

James's face during the fight. Lastly, although Vowels initially denied any involvement, he later acknowledged participating in the assault.

Sufficient evidence exists on each of the other elements as well. Whether with a beer bottle or a knife, Vowels inflicted a serious wound to James's face. A jury could conclude such an attack was intended to inflict a serious injury upon James.[2] Though direct evidence of Vowels's intent is impossible to obtain, the nature of the attack makes his intent known. He, with another, surrounded and attacked James without provocation. The initial point of attack was with a sharp object to James's face. Presuming Vowels intended the natural results of his actions, a jury could conclude beyond a reasonable doubt that Vowels intended to disfigure James or create a substantial risk of death. The result of the attack created a substantial risk of death. James's injury was serious, necessitating surgical intervention and could have caused his death if left untreated. The State was not required to show that death was likely, only that there was "a real hazard or danger of death." *State v. Carter*, 602 N.W.2d 818, 821 (Iowa 1999). We find such a danger existed.

The entirety of Vowels's challenge to the evidence is an attack on the credibility of the victim, James. We decline to revisit or reassess the valid credibility determinations made by the jury.

---

[2] A "serious injury" is defined as any bodily injury which causes a substantial risk of death, permanent disfigurement, or a protracted loss or impairment of bodily function. Iowa Code § 702.18 (1)(b)(1)–(3).

### 2. Going Armed with Intent

"A person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a class 'D' felony." Iowa Code § 708.8 (2013). Vowels claims the State failed to prove the knife was the instrumentality used to inflict James's injury. We disagree. As previously discussed, there is ample evidence James's injury occurred in the parking lot during the fight. The only instrumentality found in the vicinity of the fight that could have caused the injury was the knife, which Vowels admitted to carrying in his left front pocket that night. No explanation was offered to show how the knife came to be located under the truck, other than the reasonable inference Vowels removed it to attack James and dropped it when he was subsequently knocked out. James also testified he did not see Vowels open the knife; the jury could reasonably believe Vowels exited the bar with the knife open and ready to use. We find a jury could conclude, beyond a reasonable doubt, the knife was used in the attack.

### d. Justification

Vowels claims the State failed to disprove his defense of justification. We disagree.

As reflected in jury instruction 17 in this case, to rebut the defense of justification, the State needed to prove any one of five elements, including "the Defendant started or continued the incident which resulted in injury." *See, e.g., State v. Mayes*, 268 N.W.2d 387, 392–93 (Iowa 1979). The overwhelming evidence in this case shows Vowels initiated the confrontation. He followed

James out of the bar and with the help of Mueller, surrounded James. There was no evidence James started the fight; all credible evidence showed James retaliated after the initial attack by Vowels. We find the jury could conclude Vowels was not justified in his actions.

### C. Ineffective Assistance of Counsel

Vowels claims his trial counsel was ineffective by failing to request a proximate cause instruction. His contention is that James's life was only in danger because of his low platelet count and that James's consumption of alcohol was the proximate cause of the injury, as opposed to the knife wound.

When asserting an ineffective-assistance-of-counsel claim on direct appeal, it is incumbent upon the defendant to establish a record adequate to address the issue. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). When the record is insufficient, we will preserve the issue for postconviction relief. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Based upon a review of the record, we are unable to determine the reason Vowels's trial counsel did not request the proposed instruction. Accordingly, we preserve his claim for postconviction relief.

**AFFIRMED.**

Tabor, J. concurs; Vaitheswaran, P.J., dissents.

**VAITHESWARAN, P.J. (dissenting)**

I respectfully dissent. I would find insufficient evidence to support the jury's findings of guilt.

Under Count I—willful injury causing serious injury—the jury was instructed that the State would have to prove the following elements:

> 1. On or about the 24th day of February, 2013, the Defendant assaulted Troy James by striking the right side of his face with a knife.
> 2. The Defendant specifically intended to cause a serious injury to Troy James.
> 3. The Defendant's act caused Troy James to sustain a serious injury.
> 4. The Defendant was not acting with justification.

In my view, the record lacks substantial evidence to establish that Vowels was the person who struck the right side of James's face with a knife or that Vowels had the specific intent to cause a serious injury to him.

No one disputes that James was assaulted. It also was undisputed that a knife was discovered underneath a truck. The evidence of who owned the knife was conflicting, with Vowels asserting it did not belong to him and a police officer who questioned him stating that Vowels admitted it was his. Because we are obligated to view the evidence in the light most favorable to the State, I agree a reasonable juror also could have found that the knife belonged to Vowels. *See State v. Lamb*, 573 N.W.2d 267, 268 (Iowa 1998). Based on the officer's testimony, a reasonable juror could have found that Vowels had the knife in his left front pocket at some point.

That said, a reasonable juror was left to speculate as to when and how the knife came out of Vowels's pocket, whether it was the weapon used to slash

James, whether Vowels was the person who did the slashing, and how the knife landed under the truck. James testified that two men approached him. He could not say which one cut him. Indeed, he did not even see a knife or "anything" before he was slashed. He simply noticed the two men walking up on either side of him and reacted by decking both of them. Both fell to the ground and lost consciousness. At that point, a friend told James he was cut. Because the potential assailants were out cold, James was not in a position to enlighten himself on how he came to receive the cut.

The majority states "[t]he most probable scenario is that James sustained his injury during the fight, which occurred while Vowels was the only person on the proper side of James's face." In my view, the only way the jury could have found guilt was by conjecturing that because Vowels owned and possessed the knife at some point, he must have been the person who committed the crime. *See State v. McCullah*, 787 N.W.2d 90, 93 (Iowa 2010) (stating evidence that merely raises suspicion, speculation, or conjecture is insufficient). I believe this hypothesis does not amount to substantial evidence. Accordingly, I would reverse the finding of guilt on the willful injury causing serious injury count and remand for entry of judgment of acquittal.

The second count—going armed with intent—required the State to prove the following elements:

> 1. On or about the 24th day of February, 2013, the Defendant was armed with a knife.
> 2. The knife was a dangerous weapon as defined in Instruction No. 22G.

    3.  The Defendant moved from one point to another while he was armed, having the specific intent to use the knife against another person.

    4.  The Defendant was not acting with justification.

I can discern scant if any evidence to support a finding that Vowels "moved from one point to another while he was armed, having the specific intent to use the knife against another person."  I would reverse the finding of guilt on this count and remand for entry of judgment of acquittal.