**Alfred PETTES, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 87–94.**

Supreme Court of Iowa.

Jan. 20, 1988.

Alfredo Parrish and Elizabeth Kruidenier of Parrish & Kruidenier, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., E.A. Westfall, Co. Atty., and Drew Kouris, Asst. Co. Atty., for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO and NEUMAN, JJ.

LARSON, Justice.

Alfred Pettes was convicted by a jury of attempted murder, willful injury, and going armed with intent in violation of Iowa Code sections 707.11, 708.4, and 708.8 (1981), respectively. The convictions were affirmed by the court of appeals in an unpublished opinion. *See* 364 N.W.2d 275 (1984). Pettes filed an application in Pottawattamie County District Court for postconviction relief, Iowa Code ch. 663A (1985), asserting ineffective assistance of counsel. The district court rejected Pettes' application, and he appealed, raising two assignments of error: (1) denying the postconviction relief on its merits, and (2) imposing a "fine" on Pettes' present counsel, Alfredo Parrish, for what the district court perceived to be inconsiderate treatment of two of Pettes' witnesses at the postconviction hearing. We affirm.

 On a claim of ineffective assistance of counsel, we make an independent evaluation of the totality of the circumstances, a review tantamount to de novo. *See State v. Adalpe*, 307 N.W.2d 32, 42 (Iowa 1981); *Sims v. State*, 295 N.W.2d 420, 422 (Iowa 1980). The burden of proving ineffectiveness is on the applicant, who must establish the facts asserted by a preponderance of the evidence. *Sims*, 295 N.W.2d at 423. The lawyer, at the outset, is presumed to be competent. *Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 693–94 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...."); *Sims*, 295 N.W.2d at 423.

While Pettes' postconviction application alleged several grounds for his claim of ineffective assistance of counsel, he pursues only one of them on appeal: counsel's failure to present a defense of diminished capacity. He specifically points to counsel's failure to call a psychiatrist who had examined Pettes prior to trial. Pettes argues that the defense of diminished capacity could have negated the specific intent required to establish the charges against him. *See State v. Collins*, 305 N.W.2d 435, 436 (Iowa 1981) (diminished responsibility as bearing on specific intent crimes). *See generally* 4 J. Yeager and R. Carlson, *Iowa Practice* § 7, at 4 (1979) (comparing insanity defense, which is complete defense, and diminished capacity, which bears only on the defendant's *mens rea*).

I. In August 1982, Pettes' wife filed a petition for dissolution of marriage. Pettes became extremely upset and underwent psychiatric treatment. On September 2, 1982, Pettes confronted his wife, placed a handgun in his mouth, and pulled the trigger. He testified this was an attempt at suicide and was intended to traumatize his wife for causing him so much grief. The gun did not discharge. His wife screamed and tried to run, but Pettes caught her and beat her severely with the gun in the presence of several witnesses. As a result of the beating, Pettes' wife sustained severe injuries.

Pettes was arrested and charged with attempted murder, willful injury, and going armed with intent, and Walter P. Thomas of the Public Defender's Office in Pottawattamie County was appointed to represent him. Pettes was examined under court order by Dr. Ronald Bendorf, a Council Bluffs psychiatrist. Dr. Bendorf examined Pettes on several occasions and submitted written reports to Thomas. The first report stated the diagnosis as "adult situational stress with moderately severe depression" and observed that Pettes showed no sign that he was unaware of the crime with which he had been charged.

In a subsequent report, dated November 15, 1982, Dr. Bendorf addressed the question of Pettes' intent at the time of the beating. Dr. Bendorf concluded with this observation: "By his own admission [Pettes] intended to put [his wife] through the emotional stress and trauma of witnessing his own suicide but I question if at any time he had the intent to commit murder."

Sometime prior to trial, attorney Thomas was discharged as Pettes' attorney, and Michael Murphy was hired to represent him. Murphy discussed the diminished responsibility defense with Thomas and examined the reports from Dr. Bendorf. However, Murphy did not serve notice of the defense of diminished responsibility under Iowa Rule of Criminal Procedure 10(11)(b)(1) or pursue the theory at trial.

Pettes argued that Murphy's failure to raise diminished responsibility amounted to ineffective assistance of counsel, particularly in view of a statement by Murphy in his closing argument that Pettes was guilty of "something." Pettes argues that, in view of that admission, a diminished responsibility defense, based on a lack of intent to kill the victim, was the only obstacle that stood between Pettes and certain conviction. (Pettes' ineffective assistance claims are directed only at Murphy; he does not complain about Thomas' representation of him.)

At the postconviction hearing, Murphy testified that he had considered the diminished responsibility defense but rejected it. This decision, he testified, was prompted by what he considered to be the equivocal nature of Dr. Bendorf's opinion on the question of intent, as stated in his written report of November 15. Murphy also testified that he had known Dr. Bendorf for several years and did not expect him to deviate from his written report.

He also reasoned that Pettes would be a good witness and would be believable. Murphy felt that Pettes' testimony that he had no intent to kill his wife might be diluted by Dr. Bendorf's suggestion that, while perhaps doubtful, Pettes might have had such intent. Further weighing in Murphy's decision was his concern that the jury might find that Pettes' intent to harm himself might have been transferred to his wife, based on this language in Dr. Bendorf's November 15 report:

> The initial intent and direction of his anger at the time of the suicide attempt was to kill himself and take the anger out on himself, however when that at-

tempt was unsuccessful the anger was directed toward his estranged wife.

He further testified that his statement to the jury about Pettes being guilty of "something" was necessary to maintain credibility with the jury. Pettes had, after all, severely beaten his wife with a gun in the presence of several witnesses, and it would be difficult to convince a jury that there was not a crime in there somewhere. Murphy testified he was hoping to persuade the jury that a lesser included offense would be appropriate under the circumstances.

Dr. Bendorf testified at the postconviction hearing that, in his opinion, Pettes did not have the intent to harm his wife. However, he conceded the difficulty in attempting to determine what somebody had intended to do and suggested that his opinion in that respect was not entitled to a great deal of weight.

Murphy further testified that using the defense of diminished capacity was not good strategy in light of the fact that Pottawattamie County juries had traditionally not reacted favorably to such defenses.

■■■■ II. The test for ineffectiveness of counsel is whether the lawyer's performance was outside the range of normal competency. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). With the aid of hindsight, one might observe that the use of Dr. Bendorf's testimony and the defense of diminished capacity might have made a difference. In view of the fact that the jury convicted Pettes of the highest offenses charged, Murphy might even agree at this time. However, to overcome the presumption of Murphy's competency, Pettes cannot rely on hindsight; he must show more than the fact that Murphy's strategy backfired or that another attorney would have used the diminished capacity defense. *See Taylor*, 352 N.W.2d at 685.

■■■ In view of the equivocal nature of the doctor's reports supporting the defense of diminished capacity, the possible adverse effect of Dr. Bendorf's testimony, and the prior lack of success in asserting such defenses, we do not believe Murphy's conduct

was beyond the range of normal competency. We believe it was, rather, a decision based on trial strategy which, while justifiable, was not successful. We affirm the district court's finding that ineffective assistance of counsel was not established.

 III. In the second division of Pettes' appeal, he challenges the court's imposition of a $300 "fine" on his lawyer, Alfredo Parrish. The fine was based on the court's conclusion that Parrish had been inconsiderate of two of the witnesses called by Pettes to testify at the postconviction hearing. Specifically, the court pointed to the fact that Parrish had called the witnesses for testimony at 9:30, but ignored them until court personnel pointed out to Parrish several hours later that the witnesses were present and unaware of what they were to do. The witnesses were called by Parrish for a brief period of testimony after the noon break.

The court assessed the fine in a separate order, in which it concluded that

> Mr. Parrish's conduct was not illegal or immoral and that it does not rise to the level of contempt. However, counsel must always observe and fulfill his duty to be respectful and courteous to witnesses, especially those who are not interested parties to a lawsuit and through no fault of their own are subpoened to give testimony.

The court concluded that "Mr. Parrish's total disregard of these ladies and his failure to communicate with them until their presence was called to his attention by court personnel warrants the imposition of a sanction against him." It cited no rule or other authority for the imposition of the fine.

 We agree with the State that the matter of the sanction imposed on the attorney is not properly a part of Pettes' appeal. Any challenge to the fine should have been made through certiorari. *See*

Iowa R.Civ.P. 306 (tribunal alleged to have exceeded its proper jurisdiction or otherwise acted illegally).[1] While we know of no authority which permits the summary imposition of a fine under such circumstances, especially when they are found not to amount to contempt, Pettes' appeal is not the proper vehicle through which to raise the issue. We therefore reject this ground for reversal.

AFFIRMED.

---

1. Under Iowa R.App.P. 304, a case which is erroneously brought to this court as an appeal, rather than by certiorari, shall not be dismissed on that ground but shall proceed as though the proper form of review had been sought. That rule is inapplicable here, however, because the "fine" imposed on Pettes' attorney was not a part of the judgment denying postconviction relief. That judgment was entered in a case to which Pettes' attorney was not even a party. The fine which the attorney challenges here was imposed by a separate order which has not been challenged by either appeal or certiorari.