WENDT, Appellant, vs. MANEGOLD STONE COMPANY, Respondent. [Two cases.]

*May 5—June 1, 1942.*

*George A. Burns* of Milwaukee, for the appellants.

For the respondent there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *Henry H. Otjen.*

WICKHEM, J. The actions involved herein are based upon alleged negligence of defendant and its violation of the safe-place statute. Paul W. Wendt, hereinafter called "plaintiff," sues as an invitee, so far as the cause of action for negligence is concerned, and as a frequenter, so far as the action involving the safe-place statute is concerned. He seeks damages for injuries sustained when he fell into a pit on defendant's premises, which he claims to have been inadequately guarded. W. Maynard Wendt, a son of Paul W. Wendt, sues for injuries sustained in rescuing Paul W. Wendt after he had fallen into the pit. The sole ground upon which a verdict was directed was that plaintiffs were trespassers upon the defendant's premises. The sole issue upon this appeal is whether the trial court properly came to this conclusion as a matter of law, or whether, as contended by plaintiffs, there was a jury question as to the status of plaintiffs. A review of the facts becomes necessary.

Plaintiff was in the business of selling machinery as a manufacturer's agent. He represented the Bosch Company and sold a lubricator manufactured by this company. On

July 19, 1938, plaintiff called on Manegold Stone Company and took its order for a lubricator manufactured by the Bosch Company. The Manegold Company operated a quarry in the city of Milwaukee. In the course of making the sale, plaintiff explained the operation of the automatic force-feed lubricator to Mr. William Manegold, president of the company. He claims to have told Mr. Manegold that he would have to make a survey of the machinery in order properly to fit and adjust the lubricator to the needs of the machinery. Thereafter, he made such a survey. The machinery to which the lubricator was to be attached was located in what was called a "crusher house." This house had a small door at its northwest corner. In the center of the house was located a large stone crusher. Attached to the west side of the crusher was a large flywheel. Alongside of the crusher was a narrow passageway which ran to its south end and at this place there was a pit four feet wide and from six to eight feet deep. This pit contained a conveyor belt which operated on a roller, its purpose being to carry stone to the crusher. There is testimony that when plaintiff made his first survey of the stone crusher, the pit was guarded, being covered by floor boards and by boards that acted as a fence of about shoulder height. There is a dispute in the evidence as to the arrangements for installation, plaintiff claiming that it was understood that he was to look after the installation of the lubricator, and order certain equipment to adjust the lubricator to the machine. Plaintiff testified that he was urged to hurry up and get the lubricator installed as defendant was having trouble with the machinery. The Manegold Company was to let plaintiff know when they were ready to have the lubricator attached. On August 22, 1938, in company with his son, Maynard, and a Miss Hoffman, plaintiff called at the Manegold Stone Company. The president, Mr. William Manegold, was absent and his son, Mr. Lawrence Manegold, was in the office. Plaintiff asked if the lubricator had arrived and received an affirma-

tive answer. He stated that he had been waiting for a call and Mr. Lawrence Manegold stated that they were too busy to install it then and that they could not shut down for that purpose until Labor Day. Plaintiff stated that he could not be there that day to hook it up and that he would have to delegate that duty to his son. He proposed that the son have a look at the machine so that he could receive directions concerning its installation. Mr. Lawrence Manegold shrugged his shoulders and made no further reply. Plaintiff then called his son, explained the situation, and he and his son and Miss Hoffman went to the crusher house. It appears that the protecting boards had been removed and as plaintiff was explaining the place and manner of installation to his son, he stepped into the pit.

The trial court was of the view that there had been no invitation, express or implied, to plaintiff to enter or walk about within the crusher house, or to inspect the machinery in operation there. It was the view of the trial court that mere silence on the part of Lawrence Manegold proved no invitation and that the son's authority was not extensive enough to include such an invitation.

The trial court considered that the decision of this court in *Grossenbach v. Devonshire Realty Co.* 218 Wis. 633, 638, 261 N. W. 742, ruled the case.

The case has given us considerable difficulty but we conclude that the trial court was in error, and that there was a jury question whether plaintiff was a trespasser. From the record the jury would be entitled to believe (although it might, of course, come to a contrary conclusion) that it was understood that plaintiff was to plan and supervise installation of the lubricator; that this would necessarily involve plaintiff's presence in the crusher house, and that permission to make such visits or an invitation to do so was implied by the negotiations of the parties. Some point is made of the fact that the memorandum of purchase appears to cover the sale

but not the installation of the lubricator and it is intimated that the parol-evidence rule makes immaterial the negotiations which plaintiff claims took place between him and the president of defendant relating to installation of the new equipment.

We think that there is no merit to this suggestion. It is not claimed by plaintiff that the planning or supervision of installation was a term of the contract, or indeed, anything more than an attempt by plaintiff to develop the good will of his customer by personally looking to the successful operation of defendant's machinery. Such evidence was proper if it lends support to the inference of consent, invitation, or other circumstance rebutting the claim that plaintiff was a trespasser, and we hold that it does have that tendency to an extent sufficient to raise a jury question. In the case of *Grossenbach v. Devonshire Realty Co., supra,* relied on by the trial court, we considered that the record furnished no material for such inferences as are permissible here, and the case is distinguishable upon these grounds. In that case the court, speaking through Mr. Justice FOWLER, disposes of the matter by the following statement:

"The plaintiff was not in the boiler room as an invitee. Neither by word of anybody or by implication was she invited or permitted to enter the boiler room. She was therefore a trespasser in the common and usual meaning of that word as used in the law of negligence. 'A trespasser is one who enters upon . . . land in the possession of another without a privilege to do so created by the possessor's consent.' "

We think that it was open for the jury to conclude in this case that the entry was with the consent and for the business purposes of defendant and, if so, that plaintiff was not a trespasser. It follows that the judgment must be reversed.

*By the Court.*—Judgments reversed, and cause remanded with directions to grant a new trial.

FAIRCHILD, J. (*dissenting*). It seems to me that a salesman, who is told by the owner of premises not to come until sent for, cannot suddenly appear at the threshold, in the absence of the one with whom he was dealing, while the premises are in charge of one of limited authority, and merely by announcing his purpose of entering put upon the owner all the liability that may flow from a violation of the safe-place statute.

The burden which the law places upon the plaintiff in this situation to establish facts requiring defendant to come forward with his defense had not been lifted when the motion for a directed verdict was made. I am of the opinion that the trial court solved the problem correctly.

I am authorized to state that Mr. Chief Justice ROSENBERRY joins in this dissent.