# IN THE COURT OF APPEALS OF IOWA

No. 18-0571
Filed July 24, 2019

**RICKY LEE PUTMAN,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Fayette County, Richard D. Stochl,

Judge.

Ricky Putman appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and Greer, JJ.

**GREER, Judge.**

A postconviction-relief applicant argues his trial counsel was ineffective for failing to adequately advise him of his right to testify in his own defense and for failing to keep him informed of the defense strategy, thereby depriving him of the ability to participate in his defense. The district court determined that the applicant's trial counsel did not fail to perform an essential duty and denied the applicant's ineffectiveness claims. On our review, we affirm.

## I. Background Facts and Proceedings.

The Iowa Supreme Court set forth the relevant facts of the underlying criminal case in *State v. Putman*, 848 N.W.2d 1, 3–7 (Iowa 2014). Briefly, Putman was accused of sexually abusing two-year-old L.R. As the supreme court noted, pediatric physicians "concluded that L.R. had suffered vaginal penetration injuries," which required surgery under general anesthesia and "numerous stitches to repair the damage." *Putman*, 848 N.W.2d at 4. A jury convicted Putman of sexual abuse in the first degree. He was sentenced to life in prison. On direct appeal of his conviction, Putman challenged the sufficiency of the evidence and argued that the trial court improperly admitted evidence of child pornography on his computer. The Iowa Supreme Court affirmed his conviction. *See id.* at 8–16.

In September 2014, Putman filed an application for postconviction relief. He originally raised the same claims as he had on direct appeal. However, after amending his application, Putman now raises two ineffective-assistance-of-counsel claims. After a hearing on his amended postconviction application, the district court denied Putman's application in its entirety. Putman appeals.

## II. Standard of Review.

"We generally review the denial of an application for postconviction relief for correction of errors at law." *Sauser v. State*, 928 N.W.2d 816, 818 (Iowa 2019). However, "[w]e review ineffective-assistance-of-counsel claims de novo." *State v. Brown*, ___ N.W.2d ___, ___, 2019 WL 2710809, at *2 (Iowa 2019).

## III. Analysis.

Putman raises his postconviction claims under the Sixth Amendment of the United States Constitution. The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. amend. VI. "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate both that '(1) . . . trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *Sauser*, 928 N.W.2d at 818 (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)); *see also Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To establish prejudice, Putman must "show the results of the proceeding would have been different but for counsel's error." *Sauser*, 928 N.W.2d at 819.

Putman argues his trial counsel was ineffective for failing to adequately advise him of his right to testify in his own defense and for failing to adequately advise him of the defense theory, thereby preventing him from participating in his own defense. We will address each claim in turn.

**A. Advising Putman Regarding Whether to Testify in His Own Defense.** A criminal defendant has a constitutional right to testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 51 (1987). The defendant may knowingly, intelligently, and voluntarily waive this right. *Ledzema v. State*, 626

N.W.2d 134, 146 (Iowa 2001). The defendant's counsel must provide advice to enable the defendant to make an informed choice about testifying at trial, but the final decision regarding whether to testify is the defendant's alone. *Id.* The Iowa Supreme Court has described counsel's duty as follows:

> Counsel has a duty to advise the defendant about the consequences of testifying so that an informed decision can be made. The decision is often extremely difficult to make, but "can be the single most important factor in a criminal case." Generally, the advice provided by counsel is a matter of trial strategy and will not support a claim of ineffective assistance absent exceptional circumstances. However, when a defendant follows the misinformed advice of counsel concerning the consequences of testifying, ineffective assistance of counsel may occur.

*Id.* at 146–47 (citations omitted).

Putman elected not to testify during his criminal trial. Outside the presence of the jury, his defense counsel asked the court to make a record regarding Putman's decision not to testify:

> MR. HAWBAKER: I have discussed whether or not Mr. Putman will testify with Mr. Putman. It is his choice not to testify.
> THE COURT: Anything more need to be said?
> MR. HAWBAKER: I would just ask that the court inquire of that of Mr. Putman.
> THE COURT: Mr. Putman, do you mind answering that question?
> MR. PUTMAN: Yeah, I don't want to testify
> THE COURT: Okay. Noted. The jury will not receive any other comment on that other than the uniform instruction on the Defendant's election not to testify previously given to counsel.

Putman now argues his counsel was ineffective for failing to properly advise him regarding whether to testify in his own defense. Putman alleges that his trial counsel told him that testifying was a bad idea and would make him look guilty. Putman claims that had he been able to testify in his own defense, he could have

explained his side of the story and could have confirmed that the child pornography on his computer was not his.

At the postconviction hearing, Putman's trial counsel could not specifically recall the conversation he had with Putman about testifying. However, he did specifically remember being unsure of exactly what Putman would say in testimony. His trial counsel was concerned that potential testimony from Putman—where he denied ownership of the extensive child pornography found on his computer—would highlight "something that was extremely detrimental to us. And putting him on the stand and risking opening that door which to me [was] not a good idea." His trial counsel further testified that his normal course of conduct is to tell his clients that whether to testify is "a game-time decision" based on how the trial has progressed. He tells his clients that it is their right to testify but he would also have a conversation about the risks and benefits. If at the end of this conversation he and his client disagree about whether to testify, he would make a record with the court regarding the client's decision. If his client elects not to testify, he makes sure that there is a jury instruction informing the jury they cannot hold that decision against his client.

The district court found that the advice not to testify was sound trial strategy because "[t]here appeared a serious risk that his testimony could cause more damage to his case than good." We agree. The inconsistencies between his statements to the police and his statements when Putman testified at the postconviction hearing support trial counsel's prediction that he would not testify well. Putman has failed to show his trial counsel failed to perform an essential duty by advising him not to testify at his criminal trial.

**B. Advising Putman of the Theory of the Defense.** With regard to ineffectiveness claims based on trial strategy, "ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* at 142. "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Id.* at 143.

If the ineffectiveness claim is based on tactical or strategic decisions, we must examine the decision "in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment." *Id.* However, "[w]hile strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Id.* (quoting *Strickland*, 466 U.S. at 690–91). Courts must not "assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options." *State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982). We are to examine, not if defense counsel's actions were successful, but whether they were "justifiable." *Pettes v. State*, 418 N.W.2d 53, 56–57 (Iowa 1988).

The district court acknowledged there was a lack of evidence presented on this issue during the postconviction hearing. Putman again relies on the fact that he did not testify in his own defense as the basis for this claim of ineffectiveness.

He also cites his general lack of involvement with planning trial strategy and developing defense theories.

The defense strategy at trial was to limit the admission of child pornography evidence and to point the finger at L.R.'s father as the rapist. Before trial, Putman's trial counsel fought against the admission of pornography evidence, and the State was significantly limited in the amount of child pornography evidence presented. At trial, the jury saw a video of Putman's interview with the sheriff's deputy. In this video, Putman denies any involvement in the sexual assault. The State also presented the testimony of a technician from the Iowa Division of Criminal Investigation, who testified that she did not find any of Putman's DNA at the home. She also testified that she could not develop a DNA profile for a single hair found in the diaper that L.R.'s father had put on L.R. that morning, which may have been a pubic hair. Putman presented the testimony of Dr. Terry Melton, a mitochondrial DNA expert, who also analyzed the hair found on the diaper. Dr. Melton's results excluded Putman as the source of the hair, but included all of L.R.'s maternal relatives, her father, and seven percent of the world's population.

Putman does not allege that he would have used a different strategy at trial. Instead, he claims he should have testified in his own defense to explain his actions that night and deny that the child pornography was his. As we previously noted, trial counsel was not ineffective in advising Putman not to testify. The district court concluded, "There is nothing in this record to suggest an alternate theory that should have been advanced." We agree, and conclude Putman cannot show that his trial counsel failed to adequately involve him in trial strategy or allow him to participate in his defense.

**IV. Disposition.**

We affirm the district court's denial of Putman's application for postconviction relief.

**AFFIRMED.**