# IN THE COURT OF APPEALS OF IOWA

No. 21-1408
Filed July 26, 2023

**MUBARAK MATTA MUBARAK,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

Applicant appeals the district court decision denying his application for postconviction relief following his conviction for first-degree robbery. **AFFIRMED.**

Erin M. Carr of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Mubarak Mubarak appeals the district court decision denying his application for postconviction relief (PCR) following his conviction for first-degree robbery. He claims he received ineffective assistance because defense counsel failed to (1) file a motion to suppress to challenge the identification process; (2) file a motion to suppress to challenge the pat-down search; (3) more fully investigate the case, including calling a specific witness; (4) object to the prosecution's theme during opening statements; and (5) challenge the makeup of the jury because it did not contain an adequate proportion of African-Americans. We conclude Mubarak has not shown he received ineffective assistance, and we affirm the decision of the district court.

I.      **Background Facts & Proceedings**

The background facts are set out in *State v. Mubarak*:

> Early on September 24, 2016, Eh Nwe drove from work to his home at an apartment complex in Des Moines. Shortly before 1:00 a.m., he parked at his complex, but, before he exited his car, a man approached him on foot. Nwe could not "see his face very clear," but he described the man as black, about five foot and nine or ten inches tall, and not fat. He wore torn blue jeans, a long black jacket with a zipper and a hood that covered his head, and a round silver earring in his right ear. . . . The man set a Budweiser beer can on top of Nwe's car and told Nwe to give him his phone. . . . When Nwe did not give up his phone, the man pointed a gun at Nwe's head and told him to hand over his wallet. Nwe was able to deflect the man's hand, roll up the window, and back up the car, which shined the car's lights on the man. Nwe immediately called 911 and was able to drive away without surrendering anything. Minutes later, Officer Kyle Thies arrived and met with Nwe. Nwe described the man to Officer Thies, pointed to the area where the man went, and entered his apartment.
> Officer Thies proceeded to the location Nwe indicated—about fifty yards from where the incident occurred—where he found Mubarak and three other individuals. Mubarak wore a black jacket, blue jeans, and an earring, and he had a can of beer in his hand. Mubarak's appearance was "identical" to the description Nwe

provided, and the other three individuals at the scene did not match the description. Officer Thies detained, patted down, and questioned all four individuals, and he searched two vehicles known to be associated with the individuals. He found a gun and a loaded magazine on Mubarak, and he did not find any other weapons when searching the other individuals and the vehicles. Another officer brought Nwe to Officer Thies, and Nwe confirmed Mubarak "look[s] like" the man who pointed a gun at him. Officer Thies told Mubarak he would be charged with robbery in the first degree, and Officer Thies testified Mubarak said the charge was not appropriate "[b]ecause he didn't take anything and [Nwe] did not give him anything."

No. 17-2056, 2018 WL 5839848, at *1 (Iowa Ct. App. Nov. 7, 2018).

Mubarak was convicted of robbery in the first degree. He was sentenced to a term of imprisonment not to exceed twenty-five years. The conviction was affirmed on appeal. *Id.* at *3.

Mubarak filed a PCR application, claiming he received ineffective assistance of counsel during his criminal trial. He asserted defense counsel should have (1) moved to suppress to challenge the identification process; (2) filed a motion to suppress to challenge the pat-down search; (3) more fully investigated the case, including calling a specific witness; (4) objected to the prosecution's theme during opening statements; and (5) challenged the makeup of the jury because it did not contain an adequate proportion of African-Americans. The district court denied the PCR application. Mubarak now appeals.

## II.    Ineffective Assistance

We review de novo claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, an applicant must prove: (1) counsel failed to perform an essential duty and (2) the failure resulted in prejudice. *State v. El-Amin*, 952

N.W.2d 134, 138 (Iowa 2020). "We presume counsel performed his or her duties competently and 'measure counsel's performance against the standard of a reasonably competent practitioner.'" *State v. Warren*, 955 N.W.2d 848, 858 (Iowa 2021) (citation omitted). For the prejudice prong, a party "must show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020) (citation omitted).

**A.** Mubarak claims he received ineffective assistance because defense counsel did not move to suppress what he alleges was an impermissibly suggestive showup identification process. Nwe was taken to Mubarak's location by a police officer, where Nwe confirmed Mubarak "look[s] like" the man who pointed a gun at him. Mubarak contends that if defense counsel had moved to suppress, Nwe's identification would have been excluded.

"When unnecessarily suggestive pretrial out-of-court identification procedures conducive to mistaken identification that are incapable of repair are used, the Due Process Clause requires exclusion of the testimony of the identification." *State v. Booth-Harris*, 942 N.W.2d 562, 570–71 (Iowa 2020) (quoting *State v. Folkerts*, 703 N.W.2d 761, 763 (Iowa 2005)). The due process clause has not been violated if "the identification has sufficient aspects of reliability."[1] *Id.* at 571.

---

[1] Mubarak asserts that showup identifications are inherently suggestive and should be treated with greater caution than that required by *Booth-Harris*. 942 N.W.2d at 570–71. He asks to have *Booth-Harris* overruled. The Iowa Court of Appeals, however, is "not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

Courts use a two-part analysis for challenges to out-of-court identifications. *Id.* at 570. "First, we decide whether the procedure used for the identification was impermissibly suggestive." *Id.* (quoting *State v. Taft*, 506 N.W.2d 757, 762 (Iowa 1993)). Second, the reliability of the out-of-court identification is considered looking at the factors below:

> (1) the opportunity of the witness to view the perpetrator at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Id.* (citation omitted).

The Iowa Supreme Court noted, "[T]he research states that showups, or procedures when the officer presents the witness with a single suspect for identification, are generally less reliable because the witness then knows who the police believe is a suspect." *Id.* at 573 (citing *State v. Lawson*, 291 P.3d 673, 686 (Or. 2012)). The court stated:

> [W]hen conducted properly and within a limited time period immediately following an incident, a showup can be as reliable as a lineup. A showup is most likely to be reliable when it occurs immediately after the witness has observed a criminal perpetrator in action because the benefit of a fresh memory outweighs the inherent suggestiveness of the procedure.

*Id.* (quoting *Lawson*, 291 P.3d at 686).

While a showup may be less reliable than other identification procedures, "the admission of evidence of a showup without more does not violate due process." *State v. Nathaniel*, No. 00-1359, 2002 WL 1973021, at *2 (Iowa Ct. App. Aug. 28, 2002) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). "We examine the totality of the circumstances to determine whether the identification was reliable

even though the procedure was suggestive." *Id.* The showup here was conducted within a short time frame after the criminal offense occurred and, therefore, is likely to be reliable. *See Booth-Harris*, 942 N.W.2d at 573. We conclude Mubarak has not shown the identification procedure used here was impermissibly suggestive. *See id.* at 570.

Furthermore, even "[i]f the one-on-one showup constitutes an impermissibly suggestive identification procedure, the defendant must still show that the procedure gave rise to 'a very substantial likelihood of irreparable misidentification.'" *State v. Canada*, No 99-0967, 2000 WL 768864, at *2 (Iowa Ct. App. June 14, 2000) (citation omitted). Nwe observed the perpetrator at the time of the offense as the person spoke to him next to his car window. *See Booth-Harris*, 942 N.W.2d at 570. He was also able to observe the person in his headlights when he backed up. *See id.* He paid attention to the person who first asked for his phone and then drew a gun and asked for his wallet. *See id.* Nwe gave a detailed description of the perpetrator, noting the person's clothing and earring. *See id.* He stated Mubarak "look[s] like" the man who tried to rob him. *See id.* Also, as noted, there was a very short period of time between the offense and when Nwe identified Mubarak. *See id.* We find the identification is reliable after considering the appropriate factors.

We conclude the due process clause has not been violated because "the identification has sufficient aspects of reliability." *See id.* at 571. Mubarak has not shown he received ineffective assistance due to defense counsel's failure to file a motion to suppress the identification of Mubarak by Nwe, as such a motion would

have been unsuccessful.  *See State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009) (noting counsel does not have a duty to pursue a meritless issue).

      **B.**      Mubarak contends defense counsel should have filed a motion to suppress the results of the pat-down search.  He claims officers violated his rights by improperly stopping him and conducting a pat-down search without a warrant when there was not sufficient evidence to show he was involved in criminal activity.[2]  *See State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019) (noting warrantless searches are per se unreasonable unless they come within a recognized exception to the warrant requirement).  Mubarak asserts that a motion to suppress would have been successful and the evidence of a gun, beer can, and ammunition would have been suppressed.

      The United States Supreme Court has stated there is an exception to the warrant requirement in the Fourth Amendment of the federal constitution and "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."[3]  *Terry v. Ohio*, 392 U.S. 1, 22 (1968).  An officer also has an immediate interest "in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him."  *Id.* at 23.  Based upon "the specific reasonable inferences which [the officer] is entitled to draw from the facts

---

[2] Mubarak claims the search violated his rights under article I, section 8 of the Iowa Constitution, which protects against unreasonable searches and seizures.

[3] The same factors making a pat-down search permissible under the Fourth Amendment are also applicable to challenges under article I, section 8 of the Iowa Constitution. *See State v. Williams*, No. 19-1857, 2020 WL 7385260, at *3 (Iowa Ct. App. Dec. 16, 2020).

in light of his experience," an officer may conduct a limited pat-down search. *Id.* at 27.

A *Terry* pat-down search "must be supported by reasonable suspicion that the subject is concealing weapons or contraband." *State v. Torres*, 989 N.W.2d 121, 128 (Iowa 2023). A brief detention of an individual is permissible "based only on a reasonable suspicion that a criminal act has occurred or is occurring." *Baker*, 925 N.W.2d at 610. "The reasonable-suspicion standard 'is more than a hunch or unparticularized suspicion, but less demanding than showing probable cause.'" *State v. Steffens*, 889 N.W.2d 691, 697 (Iowa Ct. App. 2016) (citation omitted). "Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made." *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002).

Nwe described to officers the person who demanded his phone and his wallet. The person had a gun, which he pointed at Nwe. Within a short period of time and near the location where the robbery took place, officers found Mubarak, who matched the description of the person described to them by Nwe. Also, from the information provided by Nwe, officers were aware Mubarak might by carrying a gun. Considering the totality of the circumstances, the officers had a reasonable suspicion that Mubarak was involved in criminal activity. The officers could conduct a *Terry* pat-down search based on a "reasonable suspicion that the subject is concealing weapons or contraband." *See Torres*, 989 N.W.2d at 128.

We determine that even if defense counsel had filed a motion to suppress the results of the pat-down search, such a motion would have been unsuccessful.

We conclude Mubarak has not shown he received ineffective assistance of counsel. *See Carroll*, 767 N.W.2d at 645.

**C.** Mubarak claims he received ineffective assistance because defense counsel did not fully investigate the case. In particular, Mubarak states defense counsel should have presented the testimony of S.M. At the PCR hearing, Mubarak stated that S.M. would have testified that Mubarak was with him at the time of the robbery and was not participating in the robbery. Mubarak claimed S.M. was present during his trial and he was prejudiced by counsel's failure to call S.M. as a witness.

Defense counsel testified Mubarak identified S.M. as a person who could provide information helpful to the defense. She stated that she requested contact information for S.M. but Mubarak did not provide her with this information. She asked an investigator to try to locate S.M., but the search was unsuccessful. Defense counsel stated she was not informed S.M. was present during the trial. Even if she had been informed, however, she stated she "was not going to call a witness at trial that I had not asked questions of or interviewed prior to a trial."

The district court stated:

> [S.M.] was not called to testify at the PCR trial. The petitioner suggests that [S.M.] would have testified positively on his behalf if asked, but there is no evidence in the PCR record about what he would have said and whether it would have been helpful. The applicant has failed to prove trial counsel breached an essential duty or that any prejudice resulted.

Mubarak did not meet his burden to show what S.M.'s testimony would have been and how it would have helped his case. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). In addition, because he cannot show how S.M.'s testimony

would have helped his case (as he cannot show what the testimony would have been), he cannot show he was prejudiced by the failure to call S.M. as a witness. *See id.* We conclude Mubarak has not shown he received ineffective assistance of counsel on this ground.

**D.** Mubarak asserts that he received ineffective assistance because defense counsel did not object to some of the prosecutor's statements. In opening statements, the prosecutor said:

> Out of nowhere, unexpectedly, frighteningly, he draws his gun and places it on the head of Mr. Nwe. You see, for Mr. Nwe, that moment in time, his American Dream became a nightmare. I tell you that because you're going to hear a little bit about his background, how he left Burma with his family to a refugee camp in Thailand, till the United States was generous enough to open its borders . . . .

Also, in closing arguments, the prosecutor said:

> Fact, Mr. Nwe, American dream became a nightmare. It became a nightmare when he was the victim of a robbery in the first degree. Let me be clear. Let me be abundantly clear. He's charged with robbery in the first degree.

Mubarak contends the prosecutor's statements inflamed the emotions of the jury, causing the jury to base its decision on emotions rather than the facts of the case. He claims that the emphasis on Nwe's status as a refugee and immigrant distracted from Nwe's faulty identification of Mubarak as the perpetrator.

Mubarak cites no authority to support his claim that the prosecutor's statements were objectionable. "Failure to cite authority in support of an issue may be deemed waiver of that issue." Iowa R. App. P. 6.903(2)(g)(3); *see also State v. Sinclair*, 987 N.W.2d 465, 466 (Iowa Ct. App. 2022). When a party does not cite authority in an appellate brief, we may consider the issue waived. *State v. Davis*, 971 N.W.2d 546, 554 (Iowa 2022).

Furthermore, even if the issue had not been waived, we find the statements were not objectionable. The jury was instructed that it should base the verdict only upon the evidence and "[s]tatements, arguments, questions and comments by the lawyers" were not evidence. We presume that juries follow the instructions. *State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012). While case law recognizes "[t]he prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence," *State v. Musser*, 721 N.W.2d 734, 755 (Iowa 2006) (citation omitted), we conclude the prosecutor's statements here were not unduly prejudicial. The statements would not cause the jury to base its decision on emotions instead of the facts and the law. Mubarak has not shown he received ineffective assistance due to counsel's failure to object to the statements.

**E.** Mubarak claims defense counsel should have objected because the jury pool did not reflect a fair cross-section of the community. Mubarak is African-American, and he asserts that the jury pool did not reflect an appropriate proportion of African-Americans.

The Sixth Amendment of the federal constitution provides a right "to a jury drawn from a fair cross-section of the community." *State v. Plain*, 898 N.W.2d 801, 821 (Iowa 2017). Article I, section 10 of the Iowa Constitution also provides a right to a trial before "an impartial jury." *State v. Lilly*, 930 N.W.2d 293, 299 (Iowa 2019) (citation omitted).

A prima facie violation of the fair-cross-section requirement may be shown by evidence:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation

to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Plain*, 898 N.W.2d at 822 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). A criminal defendant has the burden to "show evidence of a statistical disparity over time that is attributable to the system for compiling jury pools." *Id.* at 824; *see also Lilly*, 930 N.W.2d at 306. The failure to prove any of the three prongs "is fatal to a defendant's fair-cross-section challenge." *State v. Williams*, 972 N.W.2d 720, 724 (Iowa 2022).

The district court found:

> Petitioner has provided no evidence on . . . these prongs, aside from his impression that there was only one African-American in his panel. The record is unclear about how many total jurors were on his panel, how many total jurors were in the Polk County jury pool that week, how many African-American jurors were in his pool but not on his panel, or even what the jury-eligible population of African-Americans in Polk County is. There is no evidence concerning a purported underrepresentation that might have occurred, aside from the applicant's conclusory argument that "[t]he list used for jury duty selection do not properly represent the poor and minorities of Polk County which in turn causes a lack of diversity in the jury pools." This is the same argument Lilly made, and the Supreme Court found that it was not sufficient to establish systemic exclusion. *See* [*Lilly*, 930 N.W.2d] at 305. Trial Counsel was aware of these standards and did not object. Without further proof, the applicant has failed to prove this claim and it must be denied.

We agree with the district court's conclusion that Mubarak did not meet his burden to show the jury pool or his particular jury did not represent a fair cross-section of the community. *See State v. Mong*, 988 N.W.2d 305, 311 (Iowa 2023) (finding Mong did not meet his "burden of production and persuasion in establishing a prima facie violation of his fair-cross-section right" when he did not "identify the precise feature or features in the jury-selection process that allegedly

resulted in systematic exclusion"). Because Mubarak has not shown the jury pool failed to represent a fair cross-section of the community, he has not shown there was any basis for defense counsel to object on this ground. We conclude he has not shown he received ineffective assistance of counsel. *See Carroll*, 767 N.W.2d at 645.

We affirm the district court's decision denying Mubarak's PCR application.

**AFFIRMED.**